**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Med-Fibers Europe GmbH,<br><br>   Plaintiff,<br><br>v.<br><br>Med-Fibers Incorporated,<br><br>   Defendant. | No. CV-19-04962-PHX-DJH<br><br>**ORDER** |

Pending before the Court is Defendant and Counterclaimant Med-Fibers, Inc.'s Motion for Partial Summary Judgment (Doc. 57). Plaintiff Med-Fibers Europe GmbH filed a Response (Doc. 64), and Defendant filed a Reply (Doc. 64).

**I.   Background[1]**

Plaintiff originally filed this case in state court alleging that Defendant breached a contract and the implied covenant of good faith and fair dealing. (Doc. 1-3 at 3–4). Defendant subsequently removed the case to this Court, (Doc. 1), and filed its own counterclaims against Plaintiff related to a breach of contract. (Doc. 27). Plaintiff claims it is owed certain commissions from Defendant, and Defendant argues it is owed unpaid invoices from Plaintiff.

Defendant, an American corporation, manufactures medical equipment. (Docs. 57 at 3; 64 at 3). In 2013 or 2014, Defendant entered into an agreement with Plaintiff, a German corporation, whereby Plaintiff would solicit European customers as Defendant's

---

[1] The facts in this section are undisputed, except where the Court has noted otherwise.

representative. (Docs. 57 at 3; 64 at 5). Plaintiff alleged in its Complaint that this was a written agreement. (Doc. 1-3 at 3). However, Defendant claims the agreement was only oral. (Doc. 27 at 7).[2] As part of the arrangement, Plaintiff was allowed to collect profits from the markup prices on goods sold abroad. (Doc. 57 at 3; 64 at 5). In addition, Defendant and Plaintiff discussed paying Plaintiff a commission for the business it generated. (Docs. 57 at 3; 64 at 5). After reaching the agreement, Plaintiff collected the markup on goods sold, and Defendant regularly paid a commission.

The parties dispute the precise terms of the commission. Defendant argues it had only agreed to temporarily pay Plaintiff the commission until Plaintiff was firmly established in Europe, which Defendant argues occurred in February 2015. (Doc. 57 at 5). Despite the Plaintiff having established itself in Defendant's eyes, Defendant admits it continued to pay the commission on sales to a particular customer, Quanta, through January 2016 "as a gesture of goodwill." (*Id.*) Plaintiff argues the commission from sales to Quanta were not intended to be temporary. (Doc. 64 at 6). After January 2016, Defendant stopped paying the Quanta commission. (Doc. 57 at 5).

In July 2017, Plaintiff requested $51,600 in commissions from sales made to Quanta after February 2016 (the "Commission Request"). (Docs. 57 at 6; 64 at 9). Although Defendant argues it is not obligated to pay this Commission Request, Defendant also concedes this issue is genuinely disputed. (Doc. 72 at 12).

After the Commission Request, Defendant made different payments to Plaintiff, apparently in lieu of the Commission Request. For example, Defendant reduced the price for its products so that Plaintiff could obtain larger profit margins for markups on its European sales. (Doc. 57 at 6). In addition, Defendant "added compensation in the form of a monthly payment to [Plaintiff] of $2,000/month for 12 months beginning" in August 2017. (*Id.*)[3] Defendant casts this reduction of prices and monthly payments as an accord

---

[2] Plaintiff has not produced any written agreement, although it has produced an email that references the terms of an oral agreement. (Doc. 64 at 6).

[3] Plaintiff also argues, and Defendant disputes, that it was promised an additional yearly payment of $20,000 in lieu of the Commission Request. (Doc. 64 at 10).

and satisfaction ("Accord and Satisfaction") that cleared it of any obligation to pay Plaintiff a commission on Quanta sales after July 2017. (*Id.* at 14). Plaintiff argues there is no evidence showing that it had accepted the Accord and Satisfaction "in lieu of the Quanta commission" or that the Defendant ultimately satisfied the alleged Accord. (Doc. 64 at 8).

After this disagreement, in late 2017, Plaintiff stopped paying some of Defendant's invoices (the "Invoice Request"). (Docs. 57 at 7; 64 at 10). On October 31, 2018, Defendant sent a letter telling Plaintiff it would no longer be Defendant's representative. (Docs. 57 at 8; 64 at 10). Defendant now moves for summary judgment, arguing there is no genuine dispute that it does not owe Plaintiff the Commission Request and that Plaintiff owes the Invoice Request.

## II.   Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But

if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

## III. Discussion

The Court must determine whether there is a genuine dispute of material fact showing the Accord and Satisfaction and showing that Plaintiff owes Defendant the Invoice Request.

### a. Accord and Satisfaction

Defendant argues there is no dispute that the parties reached an Accord and Satisfaction that discharged Defendant of the duty to pay any commission for sales after July 2017. (Doc. 57 at 16). Under Arizona law, an accord and satisfaction can discharge a contractual obligation when the parties agree to exchange valuable consideration in resolution of the obligation (the accord) and then execute the agreement (the satisfaction). *Abbott v. Banner Health Network*, 372 P.3d 933, 937 (Ariz. 2016). "The four elements of an accord and satisfaction are (1) proper subject matter, (2) competent parties, (3) assent or meeting of the minds of the parties, and (4) consideration." *Id.* The third element, assent or meeting of the minds, may be inferred from a party's acceptance of funds. *Frank Culver Elec., Inc. v. Jorgenson*, 664 P.2d 226, 227 (Ariz. Ct. App. 1983). If an accord is not satisfied, a non-breaching party may enforce either the original contractual duty or the duty under the accord. *See K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 213, 677 P.2d 1317, 1321 (Ariz. Ct. App. 1983) (citing Restatement (Second) of Contracts § 281, comment e).

The parties disagree as to whether Plaintiff assented to the Accord and Satisfaction. (Doc. 64 at 8). Defendant argues Plaintiff manifested its assent to the Accord and Satisfaction by accepting "the monthly payments and reduced product pricing knowing that these were offered in place of the commission . . . ." (Doc. 57 at 17). To evidence

assent, Defendants present the minutes from two of its shareholder meetings. The first took place on May 18, 2017. (Doc. 89-4 at 2). The minutes say that Frank Arnhoelter, Plaintiff's Chief Technology Officer, was in attendance and requested "payment as CTO . . . ." (*Id.*) But the minutes state this was "not possible since Frank has no social security number . . . ." (*Id.*) Instead, Defendant "offered a price reduction for some of his products to cover the EU representation and commissions." (*Id.*)

Next, Defendant presents minutes from a July 12, 2017 majority emergency shareholder meeting, at which Defendant's President and CEO, Dr. Armin Kaus, was present. (Doc. 89-5 at 2). The minutes state Defendant rejected the Commission Request and that "the ongoing commission payment retroactively has been terminated." (*Id.*) The minutes then note that they offered Plaintiff a price reduction as "an offset to the Quanta commission." (*Id.*) Then they note "it was agreed and confirmed" that Defendant would pay Plaintiff "a monthly professional fee of US$2,000 [sic] for a period of 12 months . . . ." (*Id.*) The meeting also notes that Plaintiff "received a cash payment of nearly $20,000" which it claims was payment for what Plaintiff had "double charged" defendant on one of its invoices. (*Id.*)

Defendant also presents the minutes of a July 20, 2017 meeting, which claim to restate conclusions from the prior meetings. (Doc. 89-6). It says the "start-up support commissions" had come to an end because Plaintiff no longer needed them. (*Id.* at 2). It also says Plaintiff will receive $20,000 in 2017 and again in 2018 for "ISO support, [and] CTO activities." (*Id.*) It also reiterates that Plaintiff will receive $2,000 for "a period of 12 months beginning in [A]ugust 2017." (*Id.* at 3).

In response, Plaintiff argues that the shareholder meetings were improperly convened so any action taken therein is void. (Doc. 64 at 15). Defendant argues that whether the July meetings are void is a red herring because the minutes are only intended to evidence that it had, through Dr. Kaus, communicated an offer to Plaintiff. (Doc. 72 at 9). In addition, under its bylaws, it was not necessary that such an offer be presented through a formally convened shareholder meeting. (*Id.*) The Court agrees that it is

- 5 -

irrelevant whether the meetings were properly convened. They plainly evidence that an offer had been made.

Next, Plaintiff argues no evidence shows it agreed to the Accord and Satisfaction and that Defendant never actually satisfied the purported accord because it only paid 11 of the 12 months and never paid the $20,000 for 2017 and 2018. (Doc. 64 at 15).[4] Defendant argues it had "substantially performed" its obligation to pay the $2,000 payments. (Doc. 72 at 11). Importantly, Defendant also concedes it has not paid the $20,000 and that it is "arguably unclear" whether the $20,000 payment was part of the Accord and Satisfaction. (*Id.*)

Because of this concession, there remain genuinely disputed issues of fact as to whether Defendant fulfilled the terms of the Accord and Satisfaction. If the Accord was not satisfied, Plaintiff may choose whether to enforce the original contractual duty or the duty under the Accord. *See K-Line Builders*, 677 P.2d at 1321; Restatement (Second) of Contracts § 281(2). Therefore, Plaintiff may maintain claims related to the oral agreement that underlies the Accord and Satisfaction. *See K-Line Builders*, 677 P.2d at 1321. For this reason, the Court declines to enter summary judgment on this issue.

### b. Invoice Request

Next, Defendant argues there is no genuine dispute that Plaintiff is contractually obligated to pay the Invoice Request. (Doc. 57 at 8). Plaintiff concedes it has not paid the Invoice Request. (Doc. 64 at 10–11). However, Plaintiff argues it is not obligated to pay this because Defendant materially breached their agreement by failing to pay the

---

[4] Plaintiff supports this position by citing to the declaration of Franziska Hoffman. (Doc. 64 at 10). Defendant requests to strike Ms. Hoffman's declaration because Plaintiff never identified her as a potential witness as required by Federal Rule of Civil Procedure 26(a). (Doc. 72 at 2). If a party fails to identify a witness under Rule 26(a), the party may not use that witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). Plaintiff argues it is justified because the witness it had intended to use, Mr. Arnhoelter, died in July 2020 and the declaration is harmless because Ms. Hoffman was known to the parties. (Doc. 76). The Court finds there is no substantial justification and that the declaration is not harmless. Mr. Arnhoelter passed well before the October 9, 2020 deadline to supplement disclosures, giving Plaintiff ample time to supplement its disclosures. (Doc. 53). In addition, Defendant drafted its Motion to Dismiss without the benefit of knowing that Plaintiff would invoke her as a witness. Therefore, the Court will strike Ms. Hoffman's declaration as she was not identified as a witness under Rule 26(a). *See* Fed. R. Civ. P. 37(c)(1).

Commission Request. (*Id.*) Under Arizona law, "an uncured material breach of contract relieves the non-breaching party from the duty to perform and can discharge that party from the contract." *Murphy Farrell Dev., LLLP v. Sourant*, 272 P.3d 355, 364 (Ariz. Ct. App. 2012).

Defendant conceded that there is a dispute of fact as to whether Plaintiff was owed the Commission Request for Quanta sales. (Doc. 72 at 12). In addition, Defendant does not argue the evidence shows its failure to pay the Commission Request was an immaterial breach. Instead, Defendant argues that the parties really had two separate contractual arrangements: one governing the Commission Request, and one governing the Invoice Request. (Doc. 72 at 7). Defendant argues that the evidence shows the parties treated these as two "separate, distinct, independent obligations." (Doc. 72 at 4). Furthermore, over the "course of dealing and performance," of the Invoice Request agreement, Defendant argues, Plaintiff established that it would pay the Invoice Request "without qualification . . . ." (Doc. 57 at 13). To evidence this course of dealing, Defendant cites financial documents showing that for a period of time after the Quanta commission payments ended, Plaintiff continued to pay invoice requests. (Doc. 57 at 12).

The Court finds that there is a genuine dispute of material fact as to whether there was one or two contractual arrangements. Dr. Kaus, in his Declaration supporting Defendant's own Motion, refers to the terms of one singular "oral, unwritten contract" controlling both the parties' dealings with Quanta and otherwise. (Doc. 57-1 at ¶¶ 17–19). The question then is whether the promise to continue paying Defendant is reasonably inferred from the fact that Plaintiff continued paying invoice requests for a time. Promises may be inferred from a party's course of conduct. *Carroll v. Lee*, 712 P.2d 923, 925 (Ariz. 1986). However, at the summary judgment stage, the Court is required to draw all justifiable inferences in the non-movant's favor. *Anderson*, 477 U.S. at 255. The Court may justifiably infer Plaintiff did not pay the Invoice Request because it came to realize that Defendant would not remedy what Plaintiff considered a material breach of the parties' oral contract. Therefore, the Court denies Defendant's request to enter judgment on its

breach of contract counterclaim.

## IV. Conclusion

Having found genuine disputes of material fact, the Court will deny Defendant's Motion for Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 57) is **denied**.

**IT IS FURTHER ORDERED** that the Declaration of Franziska Hoffman (Doc. 91) shall be stricken.

**IT IS FURTHER ORDERED** that in light of the denial of the Motion for Summary Judgment, the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 18 at 7) regarding notice of readiness for pretrial conference.

Dated this 25th day of August, 2021.

Honorable Diane J. Humetewa
United States District Judge